# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LISA DYNAE LEGRAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 5664** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN,** | ) | **Maria Valdez** |
| **acting commissioner of Social** | ) | |
| **Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Dynae LeGrand ("Plaintiff") filed this action pursuant to 42

U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social

Security ("the Commissioner"), which denied her claim for Social Security Disability

Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of this

Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court grants in

part and denies in part Plaintiff's Motion to Reverse the Final Decision of the

Commissioner of Social Security [28], and this case is hereby remanded to the

Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings

consistent with this Opinion.

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant
to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I.  PROCEDURAL AND FACTUAL HISTORY[2]

Plaintiff has suffered from migraines for most of her life. Unfortunately, during her early twenties, the migraines became increasingly severe and began to interfere with her everyday activities. Plaintiff saw a variety of doctors over the years to treat her migraines, but, despite having been prescribed a variety of medications, she was met with little success. During this same period, Plaintiff also developed a host of other impairments, such as fibromyalgia, depression, vertigo, and anxiety, and, by 2008, she claims that the combination of these impairments rendered her unable to work. Plaintiff thus filed a Title II application for SSDI benefits, alleging a disability onset date of December 20, 2008. Her application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled at Step Five of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from the following severe impairments: cervical facet syndrome; migraines with vertigo; anxiety disorder; personality disorder; and fibromyalgia. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that she could perform light work with the following exceptions: she must avoid concentrated exposure to hazards such as

_____

[2] The following facts from the parties' submissions are undisputed unless otherwise noted.

dangerous moving machinery or unprotected heights; she must have no more than occasional interaction with supervisors, coworkers, or the public; and she must be limited to simple, routine, repetitive tasks in an environment with no more than occasional workplace changes and no production rate or pace work.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work, but that she could perform other jobs that existed in significant numbers in the national economy. Thus, ALJ found that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

### I.     ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform

her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail

and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In reviewing an ALJ's decision, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ's Step Three determination was flawed; (2) the ALJ improperly determined that Plaintiff's claims of pain and functional limitations were not credible; and (3) the ALJ ignored medical evidence that supports more restrictions on Plaintiff's RFC. Because the Court finds the ALJ's credibility and RFC assessment to be dispositive, it will confine its discussion to those issues only.

## I.    Medical Evidence and the ALJ's RFC Assessment

In assessing a claimant's RFC, ALJs must "build an accurate and logical bridge from the evidence to [their] conclusions so that [a reviewing court may] afford the claimant meaningful review of the SSA's ultimate findings." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). If the evidence on which the ALJ relied does not support her conclusion, the decision cannot be upheld. *Steele v. Barnhart*,

290 F.3d 936, 941 (7th Cir. 2002). Here, the ALJ discussed and discredited the effects of Plaintiff's fibromyalgia and migraines, but the evidence on which she relied does not support her conclusion.

With respect to Plaintiff's fibromyalgia, the ALJ found that the objective evidence did not support Plaintiff's allegations of fibromyalgia-related pain and limitations. To support this conclusion, the ALJ explained that there was a six-month period during which Plaintiff failed to seek treatment, and that in March 2010, Plaintiff reported notable improvement in her symptoms while taking Lyrica. On their face, these facts *might* establish that Plaintiff's symptoms were under control, or that Plaintiff failed to seek treatment, but such conclusions are belied by the ALJ's next sentence: "The claimant returned to see her rheumatologist . . . in July 2010 and reported pain in her shoulders, lower back, knees, and neck." (R. 17.) Thus, to the extent that the ALJ believed Plaintiff's fibromyalgia was under control, she did not articulate why, or explain how, Plaintiff's return to her rheumatologist fits into that conclusion.

Still, the ALJ went on to explain that after the July 2010 visit, Plaintiff's rheumatologist prescribed more medication. But this hardly supports the ALJ's finding that Plaintiff's symptoms were under control. Nowhere does the ALJ discuss whether the new medication, in fact, relieved Plaintiff's pain. Nor does the ALJ cite any medical opinion indicating that Plaintiff's fibromyalgia was under control. Consequently, the Court finds no basis for the ALJ's conclusion in this regard. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (explaining that

an ALJ improperly "play[s] doctor" when she makes a medical conclusion without expert evidence).

By the same token, the ALJ's focus on Plaintiff's six-month treatment gap is puzzling: Plaintiff was suffering from fibromyalgia; she saw some success with Lyrica and therefore didn't see her doctor; but the pain later returned, thus prompting another visit to the rheumatologist. How this fluctuation in the intensity and treatment of Plaintiff's symptoms undermines their legitimacy is all but clear.

Similarly, although the ALJ noted that Plaintiff appears to have missed a follow-up appointment scheduled by her rheumatologist after the July 2010 visit,[3] it strains credulity to hold that one missed follow-up, in a long history of therapy,[4] translates to a blameworthy failure to seek treatment, much less to the conclusion that Plaintiff's symptoms were under control. Worse still, the ALJ was aware that Plaintiff lost her insurance coverage in September 2010, which might explain her reluctance or inability to see her doctors. Nonetheless, the ALJ declined to explore this issue or discuss it in her opinion, which was further error. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (explaining that an ALJ cannot rely on an uninsured claimant's sparse treatment to show that a condition is not serious without first exploring why the claimant failed to seek treatment).

---

[3] The ALJ explained that "there is no evidence in the record that the claimant [followed up]." (R. 17.)

[4] Since 2008, Plaintiff has routinely seen five physicians, three of whom are specialists, to help her with the combination of her impairments, and none of them have indicated that she missed appointments or was less than serious about her treatment plans.

The ALJ's analysis of Plaintiff's migraines and vertigo similarly misses the mark. In her opinion, the ALJ discounted the effect of Plaintiff's migraines and vertigo because her MRI and CT scans returned normal results, the record "indicate[s] few references to dizziness after April 2009," and Plaintiff apparently failed to follow up with specialists. (R. 17.) Each of these reasons is flawed.

First, the ALJ's reliance on the CT scan and MRI is misplaced because "there is no medical test available to confirm the presence or severity of migraines." *Longerman v. Astrue*, 03-C-0117-C, 2011 U.S. Dist. LEXIS 125162, at \*24-25 (N.D. Ill. 2011). MRIs and CT scans are instead used to rule out the presence of other abnormalities that might explain a patient's headaches. Accordingly, Plaintiff's normal CT scan and MRI results are not probative of whether and to what extent she suffers migraines.[5]

Second, that Plaintiff never specifically mentioned dizziness as a symptom after 2009 is immaterial. She was clinically diagnosed with migraine-associated vertigo and continued to suffer from migraines through 2010. (*See, e.g.,* R. 631) (a July 2010 report indicating that her migraines were becoming more frequent). Given these diagnoses, and that dizziness is a common symptom of migraines, it is fair to assume that Plaintiff continued to experience dizziness. But in any event, if

---

[5] This is not to say that Plaintiff "gets a pass" on presenting objective medical evidence to support her claim of disability. A claimant's self-reported symptoms, alone, are insufficient to establish disability, *see* 20 C.F.R. §§ 404.1528(a), 416.928(a). But where, as here, a claimant is diagnosed with migraines by a physician in a clinical setting, an ALJ may not rely on a paucity of diagnostic tests to cast doubt on a claimant's alleged limitations. *See Longerman v. Astrue*, 03-C-0117-C, 2011 U.S. Dist. LEXIS 125162, at \*24-25 (N.D. Ill. 2011).

the ALJ believed Plaintiff's vertigo was no longer a problem, she was required to support that finding with medical evidence, and Plaintiff's failure to articulate dizziness as a symptom is hardly sufficient evidence. *See Blakes ex rel.*, 331 F.3d at 570.

Third, in terms of Plaintiff's apparent failure to seek treatment, the sole record on which the ALJ relies is a 2009 letter from the Chicago Dizziness & Hearing Center recommending that Plaintiff come in for more diagnostic tests, provide her prior medical records, and fill a prescription that was given to her. But given Plaintiff's otherwise persistent efforts in seeking treatment for her migraines, both pre- and post-2009, the ALJ's focus on one missed appointment amounts to nothing more than an improper cherry-picking of the evidence. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (explaining that ALJs may not selectively cherry-pick facts that support their conclusions while ignoring contrary lines of evidence).

Given these errors, it is clear that the ALJ failed to build a logical bridge from the evidence to her conclusions about the effects of Plaintiff's fibromyalgia, migraines, and vertigo on her RFC.

## II.  <u>Plaintiff's Credibility</u>

Apart from the objective evidence, the ALJ's credibility determination is also lacking. The ALJ discredited Plaintiff's claims of pain and cognitive limitations because: (1) Plaintiff testified that she cooks meals for herself, shops for groceries, does laundry, sews, and reads; (2) Plaintiff reported that yoga, ice, and head decreased her neck pain; and (3) Plaintiff was taking college-level classes since her

alleged disability onset date. While the Court is mindful that an ALJ's credibility determination should not be disturbed unless it is patently wrong, *see Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010), the ALJ's credibility analysis is just that.

Primarily, the ALJ erred by mischaracterizing the extent to which Plaintiff can perform daily activities. True, Plaintiff testified that she *might* be able to perform some daily activities — but *only* when she is not having a migraine, which is rare. (*See* R. 42.) Moreover, even when she can perform such activities, Plaintiff testified, and her friends and family confirmed, that she invariably requires assistance. (*Id.*) The Court thus finds no basis for the ALJ's assertion that Plaintiff can perform her daily living activities.

Similarly, the ALJ's focus on Plaintiff's neck pain is a red herring. That the pain was somewhat alleviated by yoga and ice in no way undercuts Plaintiff's testimony about the disabling effects of her migraines, vertigo, and fibromyalgia. Plaintiff was diagnosed with these conditions by various treating specialists,[6] many of whom reported that Plaintiff frequently suffered intense, persistent migraines

---

[6] For example, Dr. Hain from the Chicago Dizziness & Hearing Center diagnosed Plaintiff with migraine associated vertigo on 4/1/09; various reports from Edwards Hospital, dated 10/19/07-8/30/09, diagnosed Plaintiff with severe migraines; a psychological evaluation by Dr. Prone dated 7/20/09 diagnosed Plaintiff with migraines, dizziness, and a GAF score of 46; Dr. Ellison, Plaintiff's primary physician, consistently noted that Plaintiff suffers 3-4 migraines per week, and that she suffers from anxiety, fibromyalgia, bouts of confusion, and insomnia; Dr. Moghadam, from Edwards Hospital also noted that Plaintiff suffered from migraines, fibromyalgia, confusion, and disorientation. (*See* R. 450-603.) As stated by the Seventh Circuit, it is unlikely that Plaintiff "is a good enough actress to fool a host of doctors and emergency-room personnel into thinking she suffers extreme pain" and even less likely "that this host of medical workers would prescribe drugs and other treatment for her if they thought she were faking her symptoms." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).

and pain. These same physicians also prescribed a variety of medications to alleviate those symptoms, but the results were unavailing. Thus, Plaintiff's ability to mitigate her neck pain hardly establishes that she was not in pain, much less that her more-global claims of pain and limitations were not credible.

And lastly, although Plaintiff was indeed enrolled in college-level courses, the Commissioner has not cited, and the Court has not found, any case law indicating that the ability to attend a one or two-hour class translates to the ability to sustain competitive employment. But even if it did, the record on which the ALJ relied is hardly probative of Plaintiff's ability to attend classes: it is a medical record that merely states Plaintiff is enrolled in two classes — not an attendance record. Worse still, that very same medical record indicates Plaintiff had to drop a class, which further undermines the ALJ's conclusion in this regard. (*See* R. 637.) As such, it is entirely unclear how often and to what extent Plaintiff was able to attend class, and therefore the mere fact of her enrollment is of limited value in assessing her credibility. As such, the Court finds the ALJ's credibility determination patently wrong.

Based on its conclusion that remand is necessary for the above reasons, the Court declines to explore in detail the remaining errors claimed by Plaintiff. That said, the Commissioner should not assume the remaining issues were omitted because no error was found. Plaintiff may raise those issues to the ALJ on remand.

On remand, it bears emphasis that because Plaintiff's impairments are generally not subject to objective testing (such as MRIs), this case largely turns on the credibility of Plaintiff and her treating physicians, as well as an analysis of the combined effect of Plaintiff's impairments. The need for this becomes especially clear in light of a hypothetical posed to the VE: when asked whether an individual with Plaintiff's RFC could work any jobs in the national economy if she had to miss three or more days of work per month due to migraines, pain, or other limiting factors, the VE's response was a clear "no." As things stand, the evidence plausibly supports Plaintiff's contention that the effects of her fibromyalgia, vertigo, and migraines (among other impairments) could very well lead her to miss multiple days of work each month. The ALJ, however, did not properly evaluate that evidence, and therefore this case must be remanded to the Commissioner.

## CONCLUSION

For the above reasons, the Court grants in part and denies in part Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [28], and this case is hereby remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

**SO ORDERED.**                                    **ENTERED:**

**DATE: <u>February 11, 2015</u>**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**